Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 180 | **DATE** | 9/29/2003 |
| **CASE TITLE** | RFC/CLC, LLC vs. SIEMENS INFORMATION, etc.,et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____ . Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Siemens Information's motion to reconsider granted in part and denied in part, Longshore's motion to alter judgment is denied and Siemens Finance motion granted as to its request for clarification [102-1, 102-2, 103-1, 105-1]. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 3 0 2003 | 118 |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
SEP 3 0 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RFC/CLC,LLC, successor-in-interest to RELATIONAL FUNDING CORPORATION, Plaintiff, v. SIEMENS INFORMATION AND COMMUNICATIONS NETWORK, INC., f/k/a SIEMENS BUSINESS COMMUNICATIONS SYSTEMS, INC., SIEMENS BUSINESS COMMUNICATIONS SYSTEMS, INC. f/k/a SIEMENS FINANCIAL SERVICES, INC. f/k/a SIEMENS CREDIT CORPORATION, and LONGSHORE SYSTEMS, INC. Defendants. | CASE NO. 00 C 0180 Judge Ronald A. Guzman |

## MEMORANDUM OPINION AND ORDER

Defendant Siemens Finance/Credit has filed a motion to clarify this Court's ruling of September 30, 2002. Also pending is Defendant Siemens Information's Motion to Reconsider this Court's ruling as well as Defendant Longshore's motion to alter judgment. For the reasons set forth below Longshore's motion to alter judgment is denied, Siemens Finance/Credit's motion to clarify is granted, and Siemens Information's motion to reconsider granted in part and denied in part.

## BACKGROUND FACTS

Plaintiff Relational Funding Corp. ("RFC") has sued Defendants Siemens Information and Communications Networks, Inc. ("Siemens Information") Defendant Siemens Financial Services, Inc. ("Siemens Finance/Credit") and Longshore Systems, Inc. for breach of contract and replevin. This matter arises from computers leased and returned under a Master Lease. The

1



facts explaining this case in detail were set forth in the Court's Memorandum Opinion and Order of September 30, 2002.

In this Memorandum Opinion, the Court ruled on (1) RFC's motion for summary judgment as to the Siemens Information and Siemens Finance/Credit; (2) Siemens Information's motion for partial summary judgment as to Count I; (3) Siemens Finance/Credit's motion for partial summary judgment as to Count IV; and (4) Defendant Longshore's motion for summary judgment as to Plaintiff RFC and Defendants Siemens Information and Siemens Finance/Credit. The Court concluded that RFC's motion should be granted in part and denied in part, Siemens's Information's motion for partial summary judgment as to Count I granted; Siemens Finance/Credit's motion for summary judgment as to Count I denied, and Longshore's motion for summary judgment granted in part and denied in part. The parties are now before us asking us to reconsider and clarify this opinion. Each of the parties arguments will be addressed in turn.

## DISCUSSION

In a narrow set of circumstances, motions to reconsider may be brought under either Federal Rule of Civil Procedure ("Rule") 59(e) or 60(b). *See* Fed. R.Civ. P. 59(e), 60(b). All motions to reconsider filed within ten days of the entry of judgment are treated as Rule 59(e) motions. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F. 3d 746, 749 (7th Cir. 1995). Rule 59(e) allows a district court to entertain a motion to alter or amend a judgment. Under this rule, a litigant may direct a court attentions to matters such as newly discovered evidence or manifest error of law or fact. *Id.*

All motions to reconsider which are served more than ten days after judgment are treated as Rule 60(b). *Id.* Pursuant to Rule 60(b), a court may allow reconsideration of a final judgment,

order, or proceeding for the following reasons: (1) inadvertence, mistake, surprise, excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct of the opposing party; (4) the judgment is void; (5) satisfaction, release of discharge of the judgement or reversal or vacating of a prior judgment upon which the judgment was based; or (6) any other justifiable reason. Fed. R. Civ. P. 60(b). Rule 60(b) is designed to provide relief in exceptional circumstance" such as excusable neglect or manifest injustice–necessitating an "extraordinary remedy." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997).

Both Longshore and Siemens Information have moved to modify the Court's ruling pursuant to Fed. R. Civ. P. 59. Neither party has cited newly discovered evidence thus we look to see if manifest errors of law or fact exist.

### Defendant Siemens Information and Communication's Motion to Alter or Amend Judgment

Siemens Information has moved to alter or amend this Court's order arguing the following: (1) the final sentence of section IV(A) should be changed because Siemens Information did not cross move against Longshore. Rather, Longshore moved for summary judgment as to the cross-claims asserted against it by Siemens Information. Siemens Information requests that the Opinion be amended in Section IV(A) to identify which provisions of which party's motion the Court is granting or denying.

Siemens Information is correct in asserting that it moved for partial summary judgment as to Count I of RFC's amended complaint only. Siemens Information's partial motion for summary judgment sought summary judgment as to the issue of whether Siemens Information's

3

notice to Siemens Finance/Credit satisfied its obligations under the relevant documents, or in the alternative, if Siemens Information was required to provide Longshore with a "copy" of the notice, that Longshore's ongoing and actual knowledge of Siemens Information's intent to return the Schedule 1057 equipment satisfied Siemens Information's notice obligation to Longshore, and whether Longshore was RFC's agent for notice such that Longshore's knowledge is imputed to RFC (*Defendant Siemens Information and Communication Networks, Inc.'s Motion for Partial Summary Judgment*).

Because Siemens Information's partial motion did not address this issue of indemnification or misrepresentation Siemens Information's motion is granted. The second half of the last sentence in section IV(A) is deleted. The last sentence of Section IV(A) is hereby amended to the following: [H]ence, Longshore's motion for summary judgment as to Siemens Information is denied.

Siemens Information also moves for reconsideration of this Court's decision to grant summary judgment in favor of Longshore on Longshore's motion for summary judgment as to Siemens Informations' cross-claim for misrepresentation. Siemens claims that this Court erred when it concluded that Siemens Information had provided "no facts" in opposition to Longshore's motion for summary judgement on the misrepresentation claim. We disagree.

Count II of Siemens Information's cross-claim against Longshore sets forth the following allegations:

> • "Longshore encouraged and permitted [Siemens Information] to believe that Longshore was the Lessor for the Schedule 1057 computers in its repeated discussions and conversations with Siemens Information *concerning return of equipment* under Schedule 1057."

4

- "Longshore knew that [Siemens Information] was unaware of RFC's status as Lessor and also knew that SICN considered Longshore to be the Lessor of the equipment under Schedule 1057. Longshore knew this at all relevant times in which it received repeated notification from both SICN directly and from ScrC as to SICN's intent to terminate the Lease at the end of its term and return the Equipment. Moreover, Longshore acted in a way intended to conceal this information from SICN, *including without limitation providing an incorrect return address for the Schedule 1057 equipment which Longshore knew was not a return address authorized by RFC.*"

- " SICN relied on Longshore's omissions and misrepresentation concerning the identity and requirement of the actual Lessor to its detriment."

Siemens Information argues that the following statements in its Local Rule 56.1 Statement of Material Facts are sufficient to raise an issue of material fact as to its misrepresentation cross-claim against Longshore.

> 43. SICN assumed that when it dealt with Longshore, it was dealing with the actual lessor for Schedule 1057 who could receive notice, provide end of term return information and take all necessary steps to accept the Schedule 1057 equipment for return at the end of the lease. (Holst 96-99; Parenti 54-57).

> 50. Holst specifically discussed with Plewak [Longshore's President] in September 1998 SICN's intent to return the computers leased under the existing schedules, including Schedule 1057, as the lease terms expired. (Holst 86).

> 56. In February 1999, SICN initiated a telephone conference with Plewak, the "lessor," and McCort from Credit. (Parenti 50).

> 58. Antonella Parenti, the SICN employee who initiated and coordinated the call, testified that the purpose of the February call was to discuss and coordinate with the lessor concerning the return procedures for the first four schedules, including Schedule 1057, so that SICN could begin to return process. (Parenti 50).

> 59. It was clear to Parenti during the call that Plewak understood and was

5

aware that SICN intended and actively coordinated plans to return the computers leased under the first four schedules. (Parenti 50).

67. Plewak knew in February 1999 that SICN intended to return the Schedule 1057 equipment at the end of the lease term. (Plewak I 193).

68. Plewak continued to have repeated communications with SICN and Credit in the Spring and Summer of 1999 concerning the return of the Schedule 1057 equipment. (Plewak I 191).

71. In April 1999, Plewak initiated and arranged for a meeting with SICN personnel in Santa Clara, California and traveled from Connecticut to meet with Holst and Parenti of SICN to discuss the returns under the existing schedules and the provision of new computers under the Refresh program. (Parenti 53).

72. One of the major topis of Plewak's April 1999 meeting was the procedures for returning the computers under the first four schedules, including Schedule 1057. (Parenti 27, 54-55; Holst 90-91, 98-99).

74. Plewak sent Parenti and Holst a written e-mail dated April 26, 1999 (Exhibit 10).

75. Plewak agrees that this e-mail message was in facts responded to issues raised by Holst and Parenti at his California meeting. (Plewak II, 72-74).

76. Both Parenti and Holst understood this e-mail was a follow-up to the various issues they discussed with Plewak at the meeting. (Holst 89-93; Parenti 55).

78. Plewak assured SICN that Longshore would "do what we can to make the transition as easy as possible." (Ex. 10).

79. Plewak provided various information in his e-mail. The first numbered item was a return address for Pinebrook Computers in Massachuset. (Ex. 10).

80. Both Parenti and Holst understood from Plewak's statements and e-mail–which specifically followed and responded to their direct request for the return address for Schedule 1057 and the other schedules–that this was the return address for all of the schedules as they had discussed with Plewak. (Holst 93, 96; Parenti 55).

82. Plewak never told Parenti or Holst that there was more than one return

6

address for any of the 2500 computers under the various schedules including
Schedule 1057 or that the Schedule 1057 equipment could not be returned to
Pinebrook Computers. (Holst 99-101; Parenti 56-57).

85. In reliance on Plewak's statement and the information he provided,
SICN began to return equipment under the various schedules to the Pinebrook
Computers address Plewak provided. (Holst 94-98).

86. This resulted in much confusion and concern once SICN finally
learned in September 1999 that Longshore did not own the Schedule 1057
equipment and that Pinebrook was not RFC's authorized return location. (Holst
70-71; 97).

Siemens Information argues that these facts taken as true raise issues of material fact as to its alleged fraudulent misrepresentation counterclaim against Longshore. We cannot agree. Consistent with our September 30, 2002 opinion even taking these facts in a light most favorable to Siemens Information, we still cannot conclude that these facts are sufficient to raise an issue of material fact that Longshore engaged in actionable fraudulent misrepresentation. The elements of fraudulent misrepresentation are the following: (1) defendant made a statement; (2) of a material nature; (3) which was untrue; (4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; (5) relied upon by Siemens Information to its detriment; (6) made for the purpose of inducing reliance, and (7) Siemens Information's reliance led to its injury. *Bensdorf & Johnson, Inc. v. Northern Telecom Ltd.*, 58 F. Supp.2d 874, 881 (N.D. Ill. 1999 (citing *Doherty v. Kahn*, 682 N.E. 2d 163, 167 (Ill. App. Ct. 1997)).

These statements are devoid of any assertion as to any representation of fact by Longshore. They establish only SICN's purpose or motive for making certain communications. At best the assertions establish SICN's belief as to who was the lessor. Nor do the statements necessarily imply that Longshore deceived SICN in a material way. Under the first assignment

7

Siemens Information agreed to act through Siemens Finance/Credit insofar as all aspects of asset management of the Equipment and all of the Lease options (i.e. return of Equipment, extensions of the lease term or purchase of the Equipment). SICN therefore, could not have been deceived into believing that it was complying with any of its legal obligations by communicating with Longshore directly. Its obligation was to communicate through Siemens Finance/Credit. Under the second reassignment Siemens Finance/Credit retained its role as the intermediary SICN was to communicate with and Longshore was the party through which Siemens Finance/Credit was, in turn, to communicate. Thus, under both assignment agreements, the one SICN knew about and agreed to, and the subsequent agreement - as to which SICN was ignorant, SICN was bound to communicate through Siemens Finance/Credit and not through Longshore. Therefore, it could not reasonably have relied upon any perceived misrepresentation (direct or by omission) that it was fulfilling its obligations under the contract by communicating with Longshore. The second agreement did not change SICN's obligations under the contract with respect to whom it was obligated to notify. It was still obligated to notify only Siemens Finance/Credit, or, at most, Siemens Finance/Credit and Longshore. Insofar as it, SICN, fulfilled these obligations with respect to notification, it did not matter that RFC was now the beneficiary of those obligations. Siemens Information's failure to notify RFC directly, even if we were to conclude that this failure was induced by some misrepresentation by Longshore, is not material as there was no obligation under the first assignment agreement to do so and the failure to do so did not inure to Siemens Information's detriment.

As to the third and fourth elements–an untrue statement known or believed to be false by the party making the statement–Siemens Information has not established that Longshore

understood the statement(s) to be false. The undisputed facts reveal that the manner in which Longshore operated was reflective of the terms of the later assignment that the parties entered into. Siemens Finance/Credit agreed to interface and negotiate with Siemens Information and Longshore regarding all aspects of asset management of the equipment and all end of the Lease options. (Exhibit 9 and 17 to Longshore's Motions for Summary Judgment). Longshore's actions were consistent with its obligations under this later assignment to be part of the rather convoluted chain of communications which the various agreements established and even if the facts established a misrepresentation by omission or inference the record is not sufficient to establish a knowing and intentional misrepresentation.

It is also undisputed that Siemens Information in accord with its notice obligation sent its January 1999 letter to Siemens Finance/Credit as opposed to Longshore to be consistent with Siemens the terms of the first assignment between Siemens Finance/Credit and Longshore. It therefore flies in the face of the established facts to argue that Siemens Information in reliance upon Longshore's misrepresentation was somehow deceived as to its obligations of notification under the its agreements. That Siemens Finance/Credit failed in its responsibility to forward that information to the appropriate party does not constitute a material misrepresentation by Longshore. Nor does the resulting the confusion mean that Longshore's failure to inform Siemens Information of the second assignment constitute a material misrepresentation which caused Siemens Information any harm or detriment.

The fact that Plewak gave Siemens Information the wrong address, standing alone also does not create a fraud or intentional misrepresentation cause of action. The late return of the equipment was caused by the failure of the notification system that RFC, Longshore, and

9

Siemens Finance/Credit agreed to in the second assignment. Siemens Information is not responsible for this breakdown. Indeed, Siemens Information was not a party to the establishment of this elaborate system of notifications. Siemens Information's only obligation was to comply with the notification and return procedures called for by the contracts to which it did agree. Any possible misrepresentations by Longshore which can be inferred from Siemens Information's statement of facts did not in any way cause Siemens Information to fail to comply with these obligations.

Finally, neither of the Siemens parties set forth any motive for Longshore to intentionally give out the wrong return address for the equipment coming off lease. It is undisputed that RFC made an up-front cash payment to Longshore and assumed Longshore's obligations under a non-recourse promissory note (Complaint, Exhibits 10-14). It is also undisputed that Siemens Finance/Credit received all twenty-four of the monthly rental payments during the twenty-four month term of Schedule 1057, and Longshore transferred its rights to the equipment to RFC. To be sure, the confusion on the return address contributed to the delayed return of the equipment, but we find that Plewak's mistake in giving an incorrect return address is insufficient to raise an issue of material fact to support Siemens Finance/Credit and Siemens Information's misrepresentation claim. To reach such a conclusion would require the Court to pile inference upon inference.

### Defendant Longshore's Motion to Modify Summary Judgment

Longshore in its motion to modify the summary judgment contends that the only remaining issue in this case is the quantity and value of the machines returned, an issue in which

Longshore is not involved. Longshore seeks entry of a judgment disposing of Siemens Information's cross-claim against it and granting judgment against Siemens Finance/Credit and RFC. In support Longshore points out that Siemens Information's cross-claim is derivative. Longshore argues because the court found for Siemens Information and against RFC on the notice issue, there is nothing for Siemens Information to recover from Longshore. Longshore further argues that because the Court denied RFC's motion for summary judgment as to Siemens Information's cross claim on the notice issue Siemens Information cannot recover anything against Longshore.

Both Plaintiff RFC as well as the Siemens Defendants oppose this motion because Longshore is the "middleman" in this dispute, and Longshore participated in the discussions regarding return of the equipment as well as gave out an incorrect return address to Siemens Information. We agree.

It is undisputed that Longshore was the initial assignee of Siemens Finance/Credit and subsequently a conduit for notification under the second assignment to RFC. Whether or not Longshore breached any of the contract provisions in question under either of these roles when it gave Siemens Information the wrong address has not yet been determined. This will depend on the precise nature of Longshore's obligations as an intermediary or conduit in the convoluted chain of communication established by the several agreements. It is undisputed that the initial batch of computers went to the wrong address and RFC did not provide the correct address until November 22, 1999. While Longshore may not have committed fraud or misrepresentation in that regard, it may nevertheless be in breach of one of several provisions in the successive contracts between the parties. Therefore, Longshore's motion to alter judgment is denied.

**Defendant Siemens Finance/Credit's Motion to Clarify**

Siemens Finance/Credit has requested this Court to clarify Section IV(B) of its Opinion relating to Longshore's motions for summary judgment against it.

Siemens Finance/Credit is unclear as to the precise relief awarded by the Court. To clarify the Court found in favor of Longshore and against Siemens Finance/Credit on the notice issue and concluded that there was no waiver by Longshore or RFC of strict compliance with the terms of the contract. Summary judgment is granted in favor of RFC and Longshore and against Siemens Finance/Credit on this issue.

## CONCLUSION

For the reasons set forth above Siemens Information's motion is granted in part and denied in part, Longshore's motion is denied and Siemens Finance motion granted as to its request for clarification [##102-1, 102-2, 103-1, 105-1].

9/29/03

SO ORDERED    ENTERED: _____
United States Judge

G:\Mary\Siemensreconsider2

12